IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **MICHAEL T. NEAL,** | ) |
| **Plaintiff,** | ) |
|  | ) **CIVIL ACTION NO.:** |
| vs. | ) |
|  | ) **JURY TRIAL DEMANDED** |
| **XTO ENERGY, INC.,** | ) |
| **Defendant.** | ) |

## COMPLAINT

**NOW COMES,** Plaintiff Michael T. Neal ("Plaintiff") and avers against XTO Energy, Inc. ("Defendant") the following:

### PARTIES AND SERVICE

1. Plaintiff is Michael T. Neal, a Citizen of the United States of America and of the State of Texas, and a resident of Tarrant County.

2. Defendant is XTO, Inc., a Delaware Corporation, whose registered Agent in Texas is Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

### JURISDICTION & VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), because Plaintiff asserts a federal civil rights claim under the federal ADA, 42 U.S.C. § 12182. This Court has supplemental jurisdiction over Plaintiffs' Texas state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant, including general jurisdiction, as Defendant's corporate headquarters are located in this District.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as Defendant resides in this district. Venue is also proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the federal and state claims occurred in this district.

## FACTUAL ALLEGATIONS

6. Plaintiff Michael T. Neal was hired by Defendant XTO Energy, Inc. on June 1, 2012 as a Large Horsepower Mechanic, at XTO's Mid-Stream Operations and Barnett Shale location in Fort Worth, TX.

7. On July 16, 2018, Plaintiff was called by Operator Barrett Howell to the Risinger Station on the E Unit because cylinder #3 had all hot valves. Barrett stayed to help Plaintiff because there were 6 suction and 6 discharge valves to repair.

8. At around 11:00 a.m., Plaintiff was positioned lying across the discharge bottle sideways, trying to get the crank end discharge lower valve out, which was stuck.

9. Because of the weight of the valve and the position Plaintiff was in, when the valve finally came out, Plaintiff caught it and stopped it from hitting the ground. When he did, the lower lumbar of his back popped, and Plaintiff immediately experienced intense pain.

10. Plaintiff was unable to catch his breath, because of the intensity of the pain in his back.

11. Plaintiff got out from in between cylinder #1 and #3 hunched over from the pain.

12. Barrett Howell looked at Plaintiff because Plaintiff screamed and asked Plaintiff if he was all right. Plaintiff told Howell "No" and said his back was injured when he caught the valve.

13. Though in extreme pain, Plaintiff continued working until 2:00 p.m. until he was no longer able to continue because of the injury to his back and the attendant pain.

14. Plaintiff called his Supervisor Wes Balliew and the XTO Triage Nurse to tell them what happened, and Wes Balliew sent Plaintiff home.

15. The next day, July 17, 2018, Plaintiff was sent to the occupational Clinic at Texas Health on 8th and Rosedale in Fort Worth. The Clinic took X-Rays, ordered an MRI and gave Plaintiff pain pills and a Z-pack of steroids. Plaintiff was instructed to go home and rest, which he did.

16. In approximately two weeks, Plaintiff was released to go back to work on light duty by Dr. Sealey, the Occupational Physician at Texas Health.

17. Plaintiff was not allowed to return to work at that time by XTO because he was waiting to be cleared to go back to work by XTO Nurse Cindy Wilks, which is XTO Company policy.

18. On August 2, 2018, XTO put Plaintiff on Workers' Compensation and Short-Term Disability.

19. In September 2018, Plaintiff called Lead Foreman Dale Fuller who promised Plaintiff that some position in the Company would be available for Plaintiff to return to, most likely in the Parts Department, and Plaintiff should not worry about his employment with Defendant.

20. Thereafter, Plaintiff had to repeatedly call Fuller to let XTO know of Plaintiff's medical progress, because Fuller never contacted Plaintiff.

21. In February 2019, Plaintiff talked to Cindy Walton, Superintendent David Powell's assistant, to take the station alarms off Plaintiff's phone. Plaintiff told Ms. Walton that he would not need the alarms anymore because Dale Fuller had told Plaintiff that Plaintiff was going to be the 3600 Parts Employee for the Large Horsepower Department due to Plaintiff's experience.

22. Ms. Walton informed Plaintiff that Plaintiff's employment was terminated, and that Plaintiff was going on long term disability.

23. Plaintiff had asked repeatedly to be moved into other positions that would be less taxing on his back, for example, into a measurement position, but was turned down by Mechanic Foreman Geoff Childs.

24. Defendant's Management Personnel told Plaintiff there were no job openings, despite the fact that Plaintiff was aware of at least three other employees who left their positions, making their positions available.

25. On or about March or April 2019 Plaintiff organized a lunch at Logan's Steakhouse with XTO Managers Dale Fuller, Wes Balliew, and Donnie Wiggington, for the purpose of determining what Company positions might be available for Plaintiff. Donnie told Dale and Wes that Plaintiff was rejected for re-assignment to other positions five times. They were both shocked.

26. Dale Fuller's words to Plaintiff at that lunch were ". . .we will find you something to do" and specifically referenced a Large Horsepower Parts Department position.

27. During this period, there was still no contact from David Powell to Plaintiff regarding the status of Plaintiff's health, despite the fact that it would be a usual courtesy for Powell to call Plaintiff and inquire about Plaintiff's medical condition and readiness to return to work.

28. In June 2019, Cindy Wilks called Plaintiff and said she wanted to get Plaintiff's long-term disability started, in case he could not return to work. Cindy also told Plaintiff that he had to be back to work by August 2, 2019 to save his job.

29. This was the first time Plaintiff heard of this ultimatum.

30. On July 5, 2019 at 11:27 a.m., Plaintiff called Dale Fuller but had to leave a voicemail. Plaintiff asked for a call back and said it was urgent because he wanted to address what Cindy told him.

31. Plaintiff's intention was to ask Fuller to get him back to work before August 2, 2019.

32. With no response, Plaintiff tried again to contact Fuller on July 19, 2019 at 10:44 a.m., again without success.

33. Plaintiff also called David Powell on July 19, 2019 at 10:55 a.m. and left Powell an urgent message. Plaintiff received a call back from Powell about 15 minutes later. This was the first time since his injury that Plaintiff had heard from Powell.

34. Plaintiff told Powell that he needed to return to work by August 2 so Plaintiff could save his employment with XTO. Powell told Plaintiff that once the Company filed for long-term disability for an employee, that person was no longer an employee of XTO and there was nothing Plaintiff could do to save his job.

35. When Plaintiff questioned Powell about moving to another position, Powell told Plaintiff that Plaintiff was not physically able to work anywhere within the company, in any position.

36. Powell told Plaintiff that Plaintiff was "looking at this wrong, it could be a new beginning of a new profession for Plaintiff."

37. Nurse Cindy Wilks had not informed Plaintiff previously of XTO's policy of terminating a person's employment status after that person went on long-term disability.

38. Plaintiff was terminated from his employment at XTO on August 7, 2019, and placed on Long-Term Disability even though he was about to do light-duty work and there were positions within the company he could perform.

39. XTO accommodated many other employees' needs but was unwilling to make any accommodation for Plaintiff, because of his disability.

40. Upon information and belief, on September 9th, 2019, in a company safety meeting Cindy Wilks and her boss, the head XTO nurse, made a statement that if an employee was physically unable to do his job, XTO would reevaluate the employee for another position, but it would be illegal for the Company to create a position for an employee who can no longer do the job for which he was hired. Plaintiff heard about this policy from four other XTO co-workers who were present at the meeting.

41. The stated policy notwithstanding, XTO created a position for employee Scott Straley.

42. XTO failed to assign Plaintiff to a light duty position as the Company did for many others. Plaintiff was able to perform job duties with restrictions. The injury to Plaintiff's back included permanent injuries to his spinal area L-3 through S-1.

43. However, Plaintiff had a medical release to go back to work with restrictions since the end of July 2018.

**POSITIONS PLAINTIFF COULD HAVE BEEN ASSIGNED**

44. On September 7, 2019, employee Cassie Flowers was transferred to a parts position that XTO told Plaintiff did not exist.

45. On that same date, employee Kent Pentagraff was moved to a sample collection position that Plaintiff was qualified for, but was not offered.

46. Also, on September 7, 2019, Jesse Ferguson was moved to a Safety Coordinator position, and Jesse had fewer qualifications for the position than Plaintiff.

47. Plaintiff was also qualified for the Safety Risk Advisor position but XTO refused to offer it to him and gave that position to another person less qualified than Plaintiff. Plaintiff possessed the leadership skills and initiative, knew what the position required, and had 10 years of industry experience.

## OTHER EMPLOYEES WHO WERE ACCOMMODATED

48. In addition, employee Paul Beagle and Noel Brown were both transferred to Parts; Scott Straley and George Christy were moved to Leak Checkers; Dennis Jones was moved to repair dump valves; Josh Martinez to a Helper position; Rich Ginn was moved to Emissions; Steve Darillek (Diabetes) moved to Parts; Russell Green (Hepatitis C) and Greg Frazier (Lower back injury) to Emissions; Dillon Katigan (Obesity) to Small Horsepower; Shane Fitzgerald (Lower back injury); and Tex Fowlett (injured elbow), to the Parts Department.

49. Despite all these positions being filled, all of which Plaintiff was qualified for, and physically able to do, not one position was ever offered to Plaintiff. Plaintiff was qualified for and able to work in the Large Horsepower Parts Department, but was never offered a position there, despite the fact that Dale Fuller had promised Plaintiff a position in that Department.

50. Plaintiff and his family are now living at an income level which is sixty percent of what Plaintiff would be earning if he were still employed by XTO. Plaintiff and his family have also lost all their employment benefits, including health insurance.

51. All of Plaintiff's employee reviews, since the commencement of his employment with XTO, were favorable.

## CONDITIONS PRECEDENT

7

**52.** All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission and the Texas Workforce Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

### VIOLATIONS OF THE ADA - PLAINTIFF IS PERMANENTLY DISABLED FROM AN INJURY HE SUFFERED ON THE JOB

**53.** Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

**54.** Plaintiff suffers and will continue to suffer a physical impairment that substantially limits one or more of his major life activities because of the back injury he suffered while at work on July 16, 2018; Plaintiff has a record of such an impairment; Plaintiff has been, and is regarded, as having such an impairment. (42 U.S.C. § 12102(1))

### DEFENDANT HAS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF ON THE BASIS OF HIS DISABILITY - DISPARATE TREATMENT

**55.** Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

**56.** Plaintiff was disabled because of the back injury he suffered while at work on July 16, 2018; Plaintiff was qualified and able to perform his essential job functions with reasonable accommodation in that there were a number of jobs he could have performed with his light duty work release; a similarly situated employee without a disability was treated more favorably than Plaintiff by the Defendant in that many other employees with and without disabilities were moved to different positions and those with disabilities were moved to positions to accommodate their disabilities as specifically described above; Plaintiff's disability was the "but for" cause of the

adverse employment action; and Plaintiff has been damaged as the direct and proximate result of that adverse employment action in that he was not allowed to return to a position on light duty or in a position he could perform with the restrictions his doctor provided.

### DEFENDANT HAS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF - FAILURE TO ACCOMMODATE PLAINTIFF WITH HIS DISABILITY

57. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

58. Plaintiff was a qualified individual with a disability; Defendant was aware of Plaintiff's disability; Defendant failed to accommodate Plaintiff's disability. Plaintiff was damaged as a result of Defendant's conduct.

### VIOLATION OF TCHRA - TEXAS LABOR CODE CHAPTER 21.051

59. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

60. Plaintiff has a disability; is qualified for a number of positions at XTO based on his long experience and skills but suffered an adverse employment decision by being denied those positions solely because of his disability. Plaintiff has been damaged as a result.

### DAMAGES

61. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was released to return to work with restrictions, and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

9

    c. All reasonable and necessary costs incurred in pursuit of this suit;

    d. Emotional pain;

    e. Expert fees as the Court deems appropriate;

    f. Front pay in an amount the Court deems equitable and just to make plaintiff whole;

    g. Prejudgment interest;

    h. Loss of enjoyment of life;

    i. Mental anguish in the past;

    j. Mental anguish in the future;

    k. Loss of earnings in the past;

    l. Loss of earning capacity which will, in all probability, be incurred in the future;

    m. Loss of benefits.

## **EXEMPLARY DAMAGES**

62. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## **PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Michael T. Neal respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law;

costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

                Respectfully submitted,

                <u>By: /s/ Renea Overstreet</u>
                Renea Overstreet
                Texas Bar No. 24066704
                E-Mail: rdolaw@gmail.com
                2100 N. Main Street, Suite 228
                Fort Worth, Texas 76164
                Tel. (817) 810-9747
                Fax. (1-855) 299-5593
                Attorney for Plaintiff
                Michael T. Neal